UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| PAUL DAVID DIMMETT, | ) | |
| Social Security No. XXX-XX-8183, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:14-cv-95-RLY-WGH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This action is before me, William G. Hussmann, Jr., United States Magistrate Judge, pursuant to Chief Judge Young's order. (Filing No. 27.) Plaintiff Paul Dimmett seeks judicial review of the Social Security Administration's final decision, which deemed him able to work and therefore ineligible for Disability Insurance Benefits. The matter is fully briefed. (Filing No. 16; Filing No. 20; Filing No. 22; Filing No. 25; Filing No. 26.) Being duly advised, I recommend that the Court **AFFIRM** the decision.

**I.     Background**

Dimmett is 61 years old and has a high school education. (Filing No. 14-5 at ECF p. 4; Filing No. 14-6 at ECF p. 6.) Dimmett last worked in June of

2011, at which point he claims he became disabled.  (*See* [Filing No. 14-5 at ECF p. 4](#); [Filing No. 14-6 at ECF p. 5](#).)  For the preceding 33 years, Dimmett worked as a sheet metal journeyman.  (*See* [Filing No. 14-6 at ECF p. 6](#).)

In June of 2011, Dimmett applied for Disability Insurance Benefits, claiming that a combination of pulmonary, cardiac, and podiatric conditions rendered him disabled.  (*See* [*id.* at ECF p. 5](#).)  The Social Security Administration denied his application initially and upon review.  (*See* [Filing No. 14-3 at ECF pp. 2–3](#).)  An Administrative Law Judge heard Dimmett's case on January 15, 2013, and issued an opinion deeming him not disabled the following month.  ([Filing No. 14-2 at ECF pp. 18–27](#), [32–65](#).)  The Administrative Council denied Dimmett's request to review the ALJ's decision on June 2, 2014.  ([*Id.* at ECF pp. 2–4](#).)

Dimmett now challenges several of the ALJ's findings, which represent the Social Security Administration's "final decision" under [42 U.S.C. § 405(g)](#).  *E.g.*, [*Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014)](#).

### A. Dimmett's Burden of Proof and the ALJ's Five-Step Inquiry

In order to qualify for benefits, Dimmett must establish that she suffered from a disability as defined by the Social Security regulations.  A disability is an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  [42 U.S.C. § 423(d)(1)(A)](#).  To establish a disability, a claimant must present medical evidence of an

impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

An ALJ must perform a sequential, five-step inquiry to determine whether a claimant is disabled:

(1) Was the claimant unemployed at the time of the hearing?

(2) Does the claimant suffer from a severe impairment or a severe combination of impairments?

(3) Are any of the claimant's impairments—individually or combined—so severe that the Social Security regulations have listed them as necessarily precluding the claimant from engaging in substantial gainful activity?

(4) Does the claimant lack residual functional capacity (RFC) to perform his past relevant work?

(5) Does the claimant lack RFC to perform any other work existing in significant numbers in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4).

The claimant is disabled only if the ALJ answers "yes" to all five questions. *See Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). An answer of "no" to any question ends the inquiry immediately and precludes the claimant from eligibility for benefits. *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* If the claimant succeeds, the

Commissioner bears the burden at Step Five of proving that the claimant is not disabled. *Id.*

### B. The ALJ's Findings

At Step One, the ALJ found that Dimmett had not engaged in substantial gainful activity since his alleged onset date of June 22, 2011. (Filing No. 14-2 at ECF p. 20.) At Step Two, the ALJ found Dimmett severely impaired by chronic obstructive pulmonary disease (COPD) and asthma. (*Id.*) The ALJ considered Dimmett's complaints of asbestosis and vision, foot, and knee problems, but he found that any such impairments were nonsevere. (*Id.* at ECF pp. 20–21.)

At Step Three, the ALJ found that none of Dimmett's impairments—individually or combined—met or medically equaled the severity of a listed impairment. (*Id.* at ECF p. 21.) The ALJ explained that he gave specific attention to Listing 3.03 (Asthma) but found no evidence indicating that Dimmett experienced chronic asthma attacks or bronchitis as required by the regulation. (*See id.* (applying 20 C.F.R. § 404, Subp't P, App'x 1).)

Before proceeding to Step Four, the ALJ found that Dimmett's RFC would allow him to perform "medium work" (*see* 20 C.F.R. § 404.1567(c)) but conceded that Dimmett should avoid "concentrated exposure to temperature extremes, humidity, odors, fumes, dusts, chemicals, and other respiratory irritants . . . ." (Filing No. 14-2 at ECF p. 22.)

Given those limitations, the ALJ found at Step Four that Dimmett could not resume full-time employment as a sheet metal worker. (*Id.* at ECF p. 26.)

4

At Step Five, though, the ALJ accepted a vocational expert's testimony that Dimmett's RFC allowed him to perform jobs like "order filler," "dining room attendant," and "self service laundry/dry cleaning attendant" as described in the *Dictionary of Occupational Titles.* (*[Id.](#)* [at ECF p. 27](#).)

## II. Standard of Review

The Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *E.g.*, *[Nelms v. Astrue,](#)* [553 F.3d 1093, 1097 (7th Cir. 2009);](#) [42 U.S.C. § 405(g).](#) The ALJ—not the Court— has discretion to weigh the evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *[Richardson v. Perales,](#)* [402 U.S. 389, 399–400 (1971).](#) Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See [Butera v. Apfel,](#)* [173 F.3d 1049, 1055 (7th Cir. 1999).](#)

Even where the ALJ has based his decision on a legal error, the Court may not remand the action if the error was harmless. *[McKinzey v. Astrue,](#)* [641 F.3d 884, 892 (7th Cir. 2011).](#) The harmless error standard does not allow the ALJ's decision to stand just because it is otherwise supported by substantial evidence. *E.g.*, *[Spiva v. Astrue,](#)* [628 F.3d 346, 353 (7th Cir. 2010).](#) Substantial-evidence review ensures that the Administration has fulfilled its statutory duty to "articulate reasoned grounds of decision." *[Id.](#)* In contrast, review for legal errors "ensure[s] that the first-line tribunal is not making serious mistakes or omissions." *[Walters v. Astrue,](#)* [444 F. App'x 913, 919 (7th Cir. 2011)](#) (non-precedential order) (citing *[Spiva,](#)* [628 F.3d at 353](#)). Therefore,

an error is harmless only if the Court determines "with great confidence" that remand would be pointless because no reasonable trier of fact could reach a conclusion different from the ALJ's. *McKinzey,* 641 F.3d at 892; *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

## III. Analysis

Dimmett, who is proceeding pro se on judicial review, asserts three flaws in the ALJ's opinion. He also raises two arguments related to motions he has filed with the Court. Because Chief Judge Young has charged me with recommending an appropriate disposition of the action (Filing No. 27), I address those arguments before turning to the merits of the ALJ's opinion.

### A. Dimmett is not entitled to default judgment.

On September 8, 2014, Dimmett moved for default judgment against the Commissioner, arguing that the Commissioner failed to answer his Complaint within 60 days. (*See* Filing No. 11 at ECF p. 2.) The Commissioner has not responded to this motion. And, although Chief Judge Young has not referred this motion to me or requested a report and recommendation specific to it, I address it here because a motion for default judgment necessarily affects the Court's disposition of any case. (*See* Filing No. 27.)

Federal Rule of Civil Procedure 12(a)(2) requires the United States and its agencies to answer within 60 days of service. The Defendants filed their Answer on September 10, 2014—62 days after the Commissioner received service of a summons. (*See* Filing No. 10; Filing No. 13.)

6

Even so, default judgment is not a proper remedy.  A court may enter default judgment against the United States or its agencies or officers "only if the claimant establishes a claim or right to relief by evidence that satisfies the court."  Fed R. Civ. P. 55(d).  In other words, the plaintiff cannot achieve default judgment unless she can prove the merits of her case.  *See Dimmitt & Owens Fin., Inc. v. United States,* 787 F.2d 1186, 1193–94 (7th Cir. 1986).

Because the Court can enter default judgment only after evaluating the merits of Dimmett's case, and because the merits are ripe for evaluation, I recommend that the Court **DENY** Dimmett's motion as moot.

### B. The Court should not order witnesses to file affidavits supporting Dimmett's claim.

On September 17, 2014, Dimmett asked the Court to order Debra Bonnell and Debra Dimmett to file affidavits testifying that certain doctors spitefully omitted diagnoses of asbestosis and heart attack from their submissions to the Social Security Administration.  (*See* Filing No. 17 at ECF p. 2.)  I denied Dimmett's request on October 1, explaining that the sole issue before the Court—whether the ALJ's decision should be upheld—must be answered by scrutinizing only those records available to the ALJ.  (*See* Filing No. 21.)

The following day, Dimmett filed a response to my order, emphasizing the veracity and materiality of his proffered testimony. (*See* Filing No. 22.)  For the sake of completeness, I recommend that the Court treat Dimmett's response as a motion to reconsider my order.

7

A court has power to reconsider any order it issues. *See [In re August, 1993 Regular Grand Jury (Med. Corp. Subpoena I)](), 854 F. Supp. 1403, 1407 (S.D. Ind. 1994)*. It should do so only rarely, however, because reopening settled matters grates against the law's reverence for finality and repose. *[Id. at 1406.]()* Consequently, the Seventh Circuit has held that a court should grant a motion to reconsider only in two extraordinary situations: where the court has produced a manifest error of fact or law through a gross misunderstanding, or where a controlling or significant change in fact or law has materialized since the court issued its initial ruling. *E.g.*, *[Bank of Waunakee v. Rochester Cheese Sales, Inc.](), 906 F.2d 1185, 1191–92 (7th Cir. 1990)*; *[Rothwell Cotton Co. v. Rosenthal & Co.](), 827 F.2d 246, 251 (7th Cir. 1987)* (quoting *[Keene Corp. v. International Fidelity Ins. Co.](), 561 F. Supp. 656, 665–66 (N.D. Ill. 1982)*, *aff'd* [736 F.2d 388 (7th Cir. 1984)]()).

An error of misapprehension occurs where the court patently misunderstands an issue or decides the matter based on considerations beyond the issues presented by the parties for review. *See [Bank of Waunakee, 906 F.2d at 1191]()*; *[Davis v. Carmel Clay Schs., 286 F.R.D. 411, 412 (S.D. Ind. 2012)]()*. Evidence is not "new" if the movant could have offered it the first time she came before the court, and the movant may not advance legal theories that—although they were available—she declined or neglected to raise in the first instance. *See [Granite State Ins. Co. v. Degerlia, 925 F.2d 189, 192 n.7 (7th Cir. 1991)]()*; *[Rothwell, 827 F.2d at 251]()*; *[Davis, 286 F.R.D. at 412]()*. The motion to reconsider is not an opportunity for a party whose position has been rejected to

8

try a different approach. *See [Bank of Waunakee,](#) 906 F.2d at 1192* (distinguishing between "a misunderstood litigant" and "an irresolute litigant that was uncertain what legal theory it should pursue").

Dimmett's response does not call the Court's attention to a misunderstanding, newly available evidence, or a change in the law. Instead, Dimmett argues that he is not seeking to expand the record but to shine a brighter light on the evidence presented to the ALJ. (*See* [Filing No. 22 at ECF p. 3](#).)

But the Court lacks jurisdiction to take that action. The District Court has jurisdiction only to review the Social Security Administration's conformity with its regulations and the validity of those regulations. *See* [42 U.S.C. § 405(g)](#). The evidence Dimmett asks the Court to compel was not available to the ALJ, and I therefore cannot think of any reason that evidence would allow the Court to assess the ALJ's compliance with the Social Security regulations.

The Court may order the Social Security Administration to reconsider a claim after reviewing new, material evidence—but only if the claimant presents "good cause" for not presenting the evidence in the administrative proceeding. *[Id.](#)* Dimmett has not explained why he did not present testimony from Ms. Bonnell or Ms. Dimmett to the ALJ or to the Appeals Council. Accordingly, the Court could not properly remand the action with instructions to obtain and consider their affidavits.

In short, Dimmett has not demonstrated that the Court misapprehended his original request to obtain this evidence, nor has he presented new evidence

9

calling the Court's order into question. I therefore recommend that, for thoroughness's sake, the Court **DENY** Dimmett's motion to reconsider the Court's ruling on his request.

### C. The ALJ did not commit reversible error by failing to designate more impairments as severe at Step Two.

Dimmett suggests that the ALJ erred by omitting a heart problem, asbestosis, and pain caused by walking from his list of severe impairments at Step Two. (*See* [Filing No. 20 at ECF pp. 3–4](#).)

Properly distinguishing between severe and nonsevere impairments is important because an ALJ cannot find a claimant disabled without finding at Step Two that she experiences a "severe medically determinable physical or mental impairment." [20 C.F.R. § 404.1520(a)(4)(ii)](#). But an ALJ does not commit reversible error by failing to find an impairment severe so long as the ALJ finds that the claimant experiences *at least one* severe impairment. *See* [*Castile v. Astrue,* 617 F.3d 923, 926–27 (7th Cir. 2010)](#); [*Wood v. Astrue,* Cause No. 4:10-cv-77-TWP-DML, 2011 WL 3155919 at \*6 (S.D. Ind. July 26, 2011)](#) (applying [*Maziarz v. Sec'y of Health & Human Svcs.,* 837 F.2d 240, 244 (6th Cir. 1987)](#)). This is because an ALJ must consider *all* of a claimant's impairments—even those that are not severe—when he determines whether the claimant satisfies a listing at Step Three[1], evaluates the claimant's RFC[2], and

---

[1] *See* [20 C.F.R. § 404.1520(a)(4)(iii)](#).

[2] *See* [20 C.F.R. § 404.1545(a)(2)](#); [*Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008)](#).

10

presents questions to a vocational expert to inform his decisions at Steps Four and Five[3].

Because the ALJ found Dimmett severely impaired by COPD and asthma (Filing No. 14-2 at ECF p. 20), any error at Step Two was harmless.

### D. The ALJ did not commit reversible error in finding that Dimmett's impairments did not meet or medically equal a listing.

Dimmett argues that the ALJ erred by finding that none of his impairments met or medically equaled a listing. (*See* Filing No. 20 at ECF pp. 4–5.) First, Dimmett argues that the ALJ should have found that he satisfied Section 1.00(B)(2) because his infirmities have rendered him unable "to ambulate effectively on a sustained basis" as required by the regulation. (*See id.* at ECF p. 4.) But Section 1.00(B)(2) does not itself set out the criteria for a listed impairment. Rather, it tells how the Social Security Administration defines "loss of function" in Listings 1.02–1.08. To succeed at Step Three, Dimmett would have to establish that his impairments satisfy the criteria of one of Listings 1.02–1.08. Section 1.00(B)(2) merely presents instructions for evaluating those criteria.

Next, Dimmett argues that the ALJ should have found him blind (presumably under Listing 2.02) because records of an eye examination he appended to his complaint demonstrate his left eye functions with visual acuity of 20/400. (*See* Filing No. 20 at ECF p. 4; Filing No. 1-1 at ECF p. 3.) But, even if the Court could consider that evidence or remand the action to the

---

[3] *See Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004).

11

Social Security Administrations with instructions to consider it, it would not demonstrate that Dimmett's poor vision satisfies a listing. Under the regulations, a person is blind if the remaining "vision in the *better* eye after best correction is 20/200 or less." Listing 2.02 (emphasis added). But Dimmett argues that his *worst* eye functions below that level. (*See* Filing No. 1-1 at ECF p. 3.) Accordingly, Dimmett has not presented a reason for finding error with the ALJ's assessment of his vision at Step Three.

Finally, Dimmett argues that the ALJ should have determined that his COPD or asthma qualified a listing. (*See* Filing No. 20 at ECF p. 5.) Listing 3.02 identifies a specific test for determining whether a person is disabled by COPD, and Dimmett does not address that test (or whether he could satisfy it) in his briefing. And Listing 3.03 identifies specific criteria that must be satisfied before a person can be found disabled based on asthma. Although Dimmett apparently disputes the ALJ's finding that Dimmett did not experience qualifying asthma attacks or bronchitis (*see id.*), Dimmett does not point to any evidence supporting that argument. Because the Court cannot grant relief on the basis of undeveloped or unsupported arguments, I find no ground for error in the ALJ's treatment of Listings 3.02 and 3.03. *See Clarrett v. Roberts,* 657 F.3d 664, 674 (7th Cir. 2011) ("undeveloped arguments are considered waived").[4]

---

[4] For the same reason, I dismiss Dimmett's unelaborated statement, "Failure to provide a good reason for the weight given to Dr. Inzerello." (*See* Filing No. 20 at ECF p. 6.) I cannot recommend remand without some argument concerning how the ALJ failed or what the ALJ should have done differently.

### E. The ALJ's determination at Step Five was supported by substantial evidence and free from legal error.

Dimmett cites three concerns with the ALJ's conclusion that he remains able to work jobs substantially available in the national economy.

First, Dimmett argues that the ALJ's determination that he is capable of working as a "dining room attendant" or "self service laundry/dry cleaning attendant" is inconsistent with the ALJ's finding that Dimmett cannot work with "concentrated exposure to temperature extremes, humidity, odors, fumes, dusts, chemicals, and other respiratory irritants." (*Compare* Filing No. 14-2 at ECF p. 22 *to* Filing No. 14-2 at ECF p. 27.) Dimmett's point is well-taken but does not require remand.

I agree that the ALJ's conclusions make strange bedfellows. A "dining room attendant" is what might commonly be called a "waiter" or "bus boy"—a person who transports food or beverages from a kitchen to a dining area or dirty dishes from a dining area to a kitchen.[5] And, of course, it is easy to imagine such work presenting concentrated exposure to temperature extremes and odors. More intuitively, a "self service laundry/dry cleaning attendant" is a person who works in a laundromat or dry cleaning facility.[6] It is easy to

---

[5] *See* United States Dept. of Labor, *OALJ Law Library, DOT, Service Occupations 301.137-010 to 362.687-018*, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM (last visited Apr. 3, 2015).

[6] United States Dept. of Labor, *OALJ Law Library, DOT, Service Occupations 363.681-010 to 389.687-018*, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM (last visited Apr. 3, 2015).

13

imagine such work presenting concentrated exposure to temperature extremes, humidity, odors, fumes, and chemicals.

Even so, these seemingly inconsistent conclusions do not warrant remand. The ALJ based his conclusion at Step Five on testimony from a vocational expert whom he informed of Dimmett's limitations. (*See* [Filing No. 14-2 at ECF pp. 27](#), [60–61](#).) Accordingly, the ALJ based his conclusion on substantial evidence. *See [Richardson,* 402 U.S. at 401](#) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation omitted).

Meanwhile, Dimmett has presented only conjecture—not evidence— supporting his contention that this work is incompatible with his RFC. Because Dimmett has not called our attention to any evidence, I cannot find that the ALJ erred by ignoring evidence contrary to his conclusion. *See, e.g.*, *[Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010)](#) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Nor can I find that the ALJ failed to fulfill his duty to develop the record by searching for such evidence. *See [Nelms v. Astrue,* 553 F.3d at 1098](#) (describing ALJ's "duty to develop a full and fair record"). Although he proceeds pro se here, an attorney represented Dimmett before the ALJ. (*See* [Filing No. 14-2 at ECF p. 32](#).) Dimmett's attorney did not raise the inconsistency at the hearing, and a claimant represented by counsel is

14

presumed to have made his best case to the ALJ.  *See [Glenn v. Sec'y of Health & Human Servs., 814 F.2d 387, 391 (7th Cir. 1987)](#)* (*as cited in [Buchholtz v. Barnhart, 98 F. App'x 540, 546 (7th Cir. 2004)](#)* (non-precedential order)).  Accordingly, I could only remand by finding the ALJ's conclusion inconsistent with my own conception of kitchen and laundry work, and I am not permitted to substitute my judgment for the ALJ's.  *See [Butera, 173 F.3d at 1055](#)*.

Dimmett also appears to argue that, because he has a criminal record, the number of jobs actually available to him is smaller than the ALJ determined.  Although I sympathize with Dimmett's plight, his criminal record has nothing to do with his disability determination.  The sole question before the Social Security Administration is whether a combination of mental and physical impairments renders him unable to work—not whether he can actually find someone to hire him.  *See* [42 U.S.C. § 423(d)(1)(A)](#).

Finally, Dimmett argues that his work record demonstrates that he would work full-time if he was able.  I interpret this as a challenge to the ALJ's assessment of Dimmett's credibility, and the Court must uphold a credibility assessment unless it is "patently wrong."  *[Craft v. Astrue, 539 F.3d 668, 678 (7th Cir. 2008)](#)*.  Dimmett's conjectural attack is not nearly enough to satisfy that high standard.  While I agree that Dimmett's work record is impressive, I find no reason to undo the ALJ's credibility determination.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's decision.  Any objections to this Report and Recommendation must be

filed with the Clerk in accordance with 28 U.S.C. ' 636(b)(1).  Failure to file timely objections within 14 days after service will constitute waiver of subsequent review absent a showing of good cause for such failure.

    **SO RECOMMENDED** the 8th day of April, 2015.

*/s/ William G. Hussmann, Jr.*
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**